IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-vs-<br><br>LUIS DANIEL VELASQUEZ-ROJO,<br><br>Defendant. | **ORDER AND**<br><br>**MEMORANDUM DECISION**<br><br><br>Case No.  2:06-cr-813 TC |

Mr. Luis Daniel Velasquez-Rojo has filed a Motion to Suppress Evidence.  Specifically, he argues the evidence was discovered during a search incident to an unlawful arrest and must be suppressed.

But the Fourth Amendment requires only that the facts known to the arresting officer establish probable cause to arrest on some ground, even if the officer states a different reason for the arrest.  Here, the Utah Highway Patrol Trooper witnessed Mr. Velasquez-Rojo commit a misdemeanor traffic offense, which provided the Trooper with probable cause and statutory authority to make the arrest.  The fact that the Trooper stated a different reason for arresting Mr. Velasquez-Rojo does not render the arrest invalid under the Fourth Amendment.

Consequently, the arrest was valid and the search incident to that arrest was constitutional.  For the reasons explained more fully below, Mr. Velasquez-Rojo's motion is DENIED.

**FINDINGS OF FACT**

Just after 8:00 a.m. on October 24, 2006—with the sun illuminating the freeway—Utah

Highway Patrol Trooper John Sheets observed a pickup truck driving north on Interstate-15 past milepost 208. (T.R. at 8:4-6.[1]) The Trooper believed the front side windows of the pickup truck were tinted darker than the 43% light transmittance required by Utah law. (Id. at 9:9-16.) Trooper Sheets stopped the pickup truck. (Id. at 10:17-11:7.)

After stopping the pickup truck, Trooper Sheets walked to the passenger side of the vehicle. He informed the driver that the windows appeared too dark and asked the driver for his license, registration, and insurance. (Id. at 12:11-15.) The driver—Mr. Velasquez-Rojo—provided his Mexican driver's license, the vehicle's registration, and proof of insurance. (Id. at 12:16-24.) Trooper Sheets asked Mr. Velasquez-Rojo if he had an American driver's license or a visa, but Mr. Velasquez-Rojo did not provide either. (Id. at 13:17-14:1, 15:8-13.)

The Trooper then informed Mr. Velasquez-Rojo that he was going to test the window tinting with a light meter, which the Trooper had in his car. (Id. at 16:6-9.) After calibrating the light meter, Trooper Sheets tested Mr. Velasquez-Rojo's windows and determined they were significantly darker than allowed by law. (Id. at 16:10-20.) Returning to his police car, the Trooper ran warrant and background checks on Mr. Velasquez-Rojo and his vehicle. (Id. at 16:25-17:4.) Although the vehicle was properly registered in Arizona to Mr. Velasquez-Rojo, the Trooper learned that Mr. Velasquez-Rojo had a "skeleton file." (Id. at 17:12-13, 18:11-15.) Arizona apparently created the skeleton file as a tracking system after issuing Mr. Velasquez-Rojo a civil violation for driving without proper endorsements. (Id. at 18:18-24, 35:6-11, 36:15-18.) The skeleton file noted that Mr. Velasquez-Rojo's driving status was "suspended" with

---

[1]All transcript citations refer to the transcript of the Evidentiary Hearing for Defendant's Motion to Suppress held before the court on March 22, 2007.

"court action required." (Id. at 20:15-17.) But because a skeleton file is not an official driver's license, it did not have an issue date or an expiration date. (Id. at 34:13-16, 35:16-19.) Based on the suspended status of the skeleton file, the Trooper determined Mr. Velasquez-Rojo was driving on suspension—which he confirmed with dispatch—a violation for which the Trooper regularly arrests drivers. (Id. at 20:23-21:11.) Less than thirteen minutes after the initial stop, Trooper Sheets arrested Mr. Velasquez-Rojo for driving on a suspended license. (Id. at 21:9-21.)

After arresting Mr. Velasquez-Rojo and placing him in handcuffs, the Trooper found narcotics on Mr. Velasquez-Rojo, in his pants pocket and in his wallet. (Id. at 14:22-23:4.) Subsequently, a greater amount of narcotics was discovered in the vehicle. (Id. at 25:8-17.)

## ANALYSIS

Mr. Velasquez-Rojo asks the court to suppress the evidence seized from his vehicle arguing the warrantless search and seizure violated the Fourth Amendment protections "against unreasonable searches and seizures." U.S. Const. amend. IV. To determine if the evidence should be suppressed, the court considers: (1) the initial stop of the pickup truck; and (2) the subsequent detention and investigation.[2]

**I.    Initial Stop Was Valid**

A traffic stop is a seizure subject to the reasonableness requirements of the Fourth Amendment. United States v. Alcaraz-Arellano, 441 F.3d 1252, 1257 (10th Cir. 2006) ("A traffic stop is a Fourth Amendment seizure 'even though the purpose of the stop is limited and the resulting detention quite brief.'") (quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979)).

---

[2]The parties do not dispute that Mr. Velasquez-Rojo has standing to challenge the alleged Fourth Amendment violations.

Here, Trooper Sheets had a reasonable suspicion that Mr. Velasquez-Rojo violated Utah law when he observed that "[t]he darkness on the window appeared to be darker than the 43 percent which is allowed by Utah." (T.R. at 9:11-13.) Accordingly, it was lawful to stop Mr. Velasquez-Rojo because the Fourth Amendment requires only that "a law enforcement officer 'must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile.'" United States v. Alvarado, 430 F.3d 1305, 1308 (10th Cir. 2005) (quoting United States v. Cervine, 347 F.3d 865, 869 (10th Cir. 2003)).

Mr. Velasquez-Rojo does not challenge the initial stop, and the court finds the stop reasonable at its inception.

## II.    The Subsequent Detention Satisfied Constitutional Requirements

Even when a stop is reasonable at its inception, a prolonged detention can violate the Fourth Amendment. The court finds no constitutional violation because: (A) the stop was not unreasonably long; (B) there was objective probable cause to justify an arrest; and (C) the search was conducted shortly after the arrest.

### A.    The Stop Was Not Unreasonably Long

Because Trooper Sheets arrested Mr. Velasquez-Rojo approximately thirteen minutes after the initial stop, the detention was not unreasonably long. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005). But the "officer conducting a routine traffic stop may legitimately detain a driver while requesting a driver's license and vehicle registration, running a computer check, and issuing a citation." United States v. Jones, 44 F.3d 860, 872 (10th Cir. 1995). Under this

standard, the Tenth Circuit has found traffic stops longer than thirteen minutes to be reasonable. See United States v. Yeomans, No. 06-1037, 2007 WL 30032, at *5 n.9 (10th Cir. Jan. 5, 2007); United States v. Briseno, 163 Fed. Appx. 658, 664 (10th Cir. 2006).

Accordingly, the duration of the detention did not violate Mr. Velasquez-Rojo's Fourth Amendment rights.

  B. The Arrest Was Valid

The arrest was valid because Trooper Sheets witnessed Mr. Velasquez-Rojo commit a misdemeanor, authorizing him to make an arrest. Mr. Velasquez-Rojo argues that the skeleton file did not provide probable cause to arrest for driving on suspension—the Trooper's stated reason for the arrest—so the warrantless arrest fails the Fourth Amendment. (See T.R. 21:12-15.)

But the court finds the arrest lawful because: (1) Trooper Sheets had authority to arrest Mr. Velasquez-Rojo for committing a misdemeanor; and (2) Trooper Sheets's stated reason for arresting Mr. Velasquez-Rojo does not affect the Fourth Amendment inquiry.

  *1. Trooper Sheets Had Authority to Arrest Mr. Velasquez-Rojo*

Because Trooper Sheets observed Mr. Velasquez-Rojo commit a misdemeanor, he had the authority to make an arrest. Specifically, the Trooper witnessed Mr. Velasquez-Rojo driving with unlawfully tinted windows, which is a misdemeanor in Utah. Under Utah Code section 41-6a-1635(1), "a person may not operate a motor vehicle with: (b) a front side window that allows less than 43% light transmittance . . . ." In turn, section 41-6a-202(1), states that a "violation of

any provision of this chapter is a class C misdemeanor, unless otherwise provided."³

      Mr. Velasquez-Rojo does not dispute his windows were tinted more than allowed by Utah law. And Trooper Sheets used a calibrated light meter to confirm that Mr. Velasquez-Rojo's windows violated Utah law. (T.R. at 16:10-20.)

      Accordingly, Trooper Sheets had authority to arrest Mr. Velasquez-Rojo because Utah authorizes "[a] peace officer may make an arrest . . . without warrant . . . (1) for <u>any public offense committed</u> . . . <u>in the presence of any peace officer</u> . . . ."⁴ Utah Code Ann. § 77-7-2 (2006) (emphasis added).

      The Utah Supreme Court has explained that "[t]he term 'public offense' under section 77-7-2(1) generally includes misdemeanors." <u>State v. Trane</u>, 2002 UT 97, ¶ 29, 57 P.3d 1052 (citing <u>Oleson v. Pincock</u>, 251 P. 23, 24-25 (Utah 1926) ("The term public offense, in view of other provisions in the statute, necessarily includes every public offense constituting a misdemeanor.")).

      Similarly, the Tenth Circuit has ruled that Utah policemen are authorized to arrest drivers

---

³Although Mr. Velasquez-Rojo's car was registered in Arizona, the court need only consider whether he violated the Utah requirement. As the Tenth Circuit explained in a similar case, "Utah is not required by the Full Faith and Credit Clause to apply the window tinting statute of [another state] in lieu of its own statute." <u>United States v. Ramirez</u>, 86 Fed. Appx. 384, 386 (10th Cir. 2004). But Trooper Sheets testified that Mr. Velasquez-Rojo's windows violated Arizona's tinting statute, as well. (T.R. at 16:19-20 ("[I]t was even in violation of Arizona law, and their law is 33 percent.").)

⁴Trooper Sheets qualifies as a peace officer in this matter. <u>See</u> Utah Code Ann. 53-8-106 (2006) ("(1) The commissioner, superintendent, and <u>each member of the Highway Patrol have the powers of peace officers</u> in each county of the state with the exception of the power to serve civil process. (2) They may serve criminal process, arrest and prosecute violators of any law of this state, and have the same right as other peace officers to require aid in executing their duties.") (emphasis added).

for class C misdemeanor traffic violations.  United States v. Lugo, 170 F.3d 996, 1003 (10th Cir. 1999).  Specifically, the circuit court found "a legitimate basis to arrest" because "the officer observed that [defendant] was speeding and operating a vehicle without a valid driver's license." Id.  Since the officer had sufficient cause to arrest, the Lugo court upheld the denial of defendant's motion to suppress evidence seized contemporaneously to that arrest.  Id.; see also Maryland v. Pringle, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause"); Atwater v. City of Lago Vista, 532 U.S. 318, 340 (2001) ("We simply cannot conclude that the Fourth Amendment, as originally understood, forbade peace officers to arrest without a warrant for misdemeanors not amounting to or involving breach of the peace.").

Consequently, Trooper Sheets had statutory authority to arrest Mr. Velasquez-Rojo after observing Mr. Velasquez-Rojo drive with illegally tinted windows.

*2.     The Arrest Was Valid Regardless of the Trooper's Stated Reasons*

Because Trooper Sheets had authority and probable cause to arrest Mr. Velasquez-Rojo, the Trooper's stated reason for the arrest is irrelevant under the Fourth Amendment.  It does not matter that Trooper Sheets actually "[p]lace[d] him under arrest for driving on suspension."[5] (T.R. at 21:15.)

An arresting officer satisfies the Fourth Amendment requirements for a warrantless arrest if he has probable cause that an offense was committed in his presence.  Atwater, 532 U.S. at 354

---

[5]Finding authority to arrest for the excessively tinted windows, the court does not consider whether Trooper Sheets could have lawfully arrested Mr. Velasquez-Rojo for driving on suspension based on his skeleton file.

7

("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Courts must not consider the arresting officer's subjective intent when determining if the arrest was made with probable cause. For example, in Devenpeck v. Alford, 543 U.S. 146 (2004), an individual was arrested for tape recording police officers. Id. at 148-50. Arguing that recording police officers during a traffic stop was legal, the man sued the police officers for an unlawful arrest. Id. at 152-55. But the Supreme Court ruled that the arrest was constitutional as long as the police had probable cause to arrest the man for an offense other than the one stated by the arresting officer.[6] Id. In its ruling, the Court expressly rejected "that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest . . . ." Id. at 153. Accordingly, it does not matter "whether [the officer] correctly identifies a general class of offense for which probable cause exists," because courts should not consider the "arresting officer's statement of his reason" for the arrest. Id. at 154 (emphasis added). Rather, "[t]hose are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." Id. at 155 (emphasis added).

Applying the Devenpeck rule, the Tenth Circuit concluded that "[i]t is constitutionally irrelevant that Officer Lucero's reason for arresting [defendant] was his incorrect belief that she had violated a restraining order. All that matters is whether he possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground." Apodaca v. City of

---

[6]The Supreme Court did not decide whether the police actually had probable cause to arrest on alternative grounds, remanding such a determination "[b]ecause the Court of Appeals held that those offenses were legally irrelevant . . . ." Devenpeck, 543 U.S. at 156.

Albuquerque, 443 F.3d 1286, 1289 (10th Cir. 2006) (emphasis added).

Here, Trooper Sheets confirmed Mr. Velasquez-Rojo's windows were excessively tinted by using a calibrated light meter. Because the facts provided probable cause that Mr. Velasquez-Rojo committed a misdemeanor—which provided the Trooper with authority to arrest—it does not matter that the Trooper stated that he was arresting Mr. Velasquez-Rojo for a different offense.

Ultimately, Mr. Velasquez-Rojo's arrest was supported by probable cause that he committed a class C misdemeanor, making his arrest constitutional even though Trooper Sheets stated a different reason for the arrest.

      C.     The Search Incident to Arrest Was Valid

Because the court finds the arrest of Mr. Velasquez-Rojo valid, the search incident to his arrest is also valid. It is well established that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 454 U.S. 454, 460 (1981) (footnote omitted).

Shortly after the arrest, Trooper Sheets found narcotics on Mr. Velasquez-Rojo, and then found additional narcotics in his vehicle. For the reasons stated above, the arrest was valid, so these searches incident to the arrest are also valid.

Consequently, the Motion to Suppress is DENIED.

## CONCLUSION

For the foregoing reasons, Mr. Velasquez-Rojo's Motion to Suppress Evidence (dkt. #17) is DENIED.

SO ORDERED this 1st day of June, 2007.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge